IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LISA MOWERY,

  Plaintiff,

v.

METROPOLITAN LIFE INSURANCE
COMPANY and DIGNITY HEALTH'S HEALTH
AND WELFARE PLAN,

  Defendants.

OPINION & ORDER

16-cv-516-jdp

---

Plaintiff Lisa Mowery brought this action to recover long-term disability benefits under defendant Dignity Health's Health and Welfare Plan, administered by defendant Metropolitan Life Insurance Company. She claimed that defendants' decision denying her claim for long-term disability benefits violated her rights under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a)(1)(B). The court granted Mowery's motion for summary judgment, concluding that defendants acted arbitrarily and capriciously in denying Mowery benefits and remanding the case to defendants for further administrative proceedings. Dkt. 32. Now Mowery moves for reasonable attorney fees and interest. Dkt. 34.

ANALYSIS

A. Reasonable attorney fees

Mowery requests her reasonable attorney fees under 29 U.S.C. § 1132(g)(1). This statute allows "a court 'in its discretion' [to] award fees and costs 'to either party,' as long as the fee claimant has achieved 'some degree of success on the merits.'" *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 245 (2010) (citation omitted) (quoting *Ruckelshaus v. Sierra Club*,

463 U.S. 680, 694 (1983)). By virtue of the court's decision to grant summary judgment in her favor, Mowery has satisfied this threshold requirement.

The next question is whether the court *should* award fees. The Seventh Circuit uses two alternative tests for deciding this question in in ERISA cases, the first of which involves consideration of five factors: (1) the degree of the offending party's culpability or bad faith; (2) the ability of the offending party to satisfy personally an award of attorney fees; (3) whether an award of attorney fees against the offending party would deter other persons acting under similar circumstances; (4) the amount of benefit conferred on members of the plan as a whole; and (5) the relative merits of the parties' positions. *Raybourne v. Cigna Life Ins. Co.*, 700 F.3d 1076, 1089-90 (7th Cir. 2012). The second test focuses on whether the losing party's position was "substantially justified." *Id.* at 1090. "[T]he two tests essentially pose the same question: was the losing party's position substantially justified and taken in good faith, or was that party simply out to harass its opponent?" *Id.* The court will use the five-factor test as it "more accurately articulates the various equitable factors appropriate to consider in determining whether attorney fees are appropriate, although the result would be the same under the second test as well for much the same reasons." *Univ. of Wis. Hosp. & Clinics, Inc. v. Aetna Life Ins. Co.*, 24 F. Supp. 3d 808, 817 (W.D. Wis. 2014) (quoting *Freeland v. Unum Life Ins. Co. of Am.*, No. 11-cv-503, 2013 WL 4482995, at *17 (W.D. Wis. Aug. 19, 2013)).

Starting with the first factor, the court concludes that MetLife's denial was especially ill-founded in this case. MetLife blindly followed the opinion of its independent physician consultant, Dr. Robert Lin, despite his multiple material errors and omissions. And MetLife failed to analyze how Mowery's well-documented and serious allergic reactions affected her ability to perform the important tasks of her job with reasonable continuity; such an analysis

was required under the Plan. This was not the first time MetLife made such errors, as the Seventh Circuit pointed out these same kinds of errors in MetLife's denial of another claimant's disability benefits in *Majeski v. Metropolitan Life Insurance Co.* eight years ago. 590 F.3d 478, 483-84 (7th Cir. 2009). Rather than learning from its mistakes, it appears that MetLife continued to make them. MetLife provided multiple reviews of Mowery's claim before making its final benefits determination, but the number of reviews doesn't matter if the process of review depends ultimately on the flawed analysis of a MetLife consultant.

Defendants argue that their litigation of this case was not in bad faith because they offered Mowery several extensions, "cited case law and facts in support of their position," and did not take any position in an attempt to harass Mowery. Dkt. 39, at 4. The court has no criticism of counsel for MetLife; the problem is with MetLife's underlying decision, not counsel's defense of it. The first factor weighs in favor of awarding Mowery her attorney fees.

The remaining factors also weigh in favor of awarding Mowery fees. MetLife, a large insurance company, has ample resources to satisfy an award of attorney fees. (MetLife insures the Plan, so payment of fees will not deplete the Plan assets.) An award of attorney fees here may deter MetLife from similar errors in the future. That deterrence will confer a benefit on plan participants. The court will award fees.

Next, the court must determine the amount of fees. The court uses a lodestar method to determine a reasonable fee, "multiplying the 'number of hours reasonably expended on the litigation . . . by a reasonable hourly rate.'" *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Mowery seeks a total of $81,078 in attorney fees for the 279 hours that her attorneys spent working on this

case. The two attorneys who performed work ordinarily charge $280 per hour and $450 per hour. Mowery also seeks $302.72 in online legal research fees.[1]

First, the court must determine whether the hourly rates are reasonable. The Seventh Circuit "define[s] a reasonable hourly rate as one that is 'derived from the market rate for the services rendered' [and] presume[s] that an attorney's actual billing rate for similar litigation is appropriate to use as the market rate." *Id.* at 640 (quoting *Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003)). As evidence of reasonableness, Mowery has submitted affidavits from her attorneys, who indicate that their proffered rates are their "market rates." Dkt. 36, ¶ 9 and Dkt. 37, ¶ 7. This is specious. The real question is what are the hourly rates that Mowery's attorneys' actually charge and get paid? Their actual billing rates would be presumptively reasonable. *Pickett*, 664 F.3d at 640. But their conclusory assertions about their own "market rates" are not helpful.

It's apparent here that Mowery's attorneys are working on contingency, so they may not have actual hourly billing rates, which is perfectly fine. So the court looks then for the "next best evidence" of the market rate. *Id.* Preferably, this is third-party evidence of the hourly rates charged by attorneys of similar experience doing similar work. But also acceptable are fee awards that the attorney has received in similar cases. *Id.* Mowery's attorneys have supplied this information in the form of affidavits from other attorneys who believe that the rates that Mowery's attorneys charged are reasonable. Dkt. 37-3, ¶ 10 and Dkt. 37-4, ¶ 9.

---

[1] As Mowery recognizes, costs for online legal research are recoverable only as part of an award of attorney fees, not as costs. *See Haroco, Inc. v. Am. Nat'l Bank & Tr. Co.*, 38 F.3d 1429, 1440-41 (7th Cir. 1994).

Defendants argue that Mowery fails to prove a reasonable rate because she does not provide a fee agreement. The fee agreement might support the reasonableness of the fees, but it is not a requirement. Defendants also argue that Mowery's attorneys' rates are not reasonable because defendants' attorneys charge lower rates. But the evidence of what MetLife is paying its counsel is only one data point; it's not enough to set the market rate for ERISA work.[2] The rates that Mowery's attorneys propose for this case are reasonable.

The closer issue is the reasonableness of the hours that Mowery's attorneys billed. The court must determine "the number of hours 'reasonably expended,'" *Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 553 (7th Cir. 1999), which does not include hours that were "excessive, duplicative, or unnecessary" or hours than an attorney would not normally bill to a paying client. *Stark v. PPM Am., Inc.*, 354 F.3d 666, 674 (7th Cir. 2004). Defendants argue that a downward adjustment is necessary because of "the time and labor required," "the novelty and difficulty of the questions," and "the skill requisite to perform the legal service properly." *Hensley*, 461 U.S. at 430 n.3. Specifically, they complain about the 36.5 hours that Mowery's attorneys spent drafting the complaint, the 182 hours spent briefing the parties' cross-motions for summary judgment, and the 29.5 hours spent drafting Mowery's motion for fees. (Presumably, defendants would also complain about the 15.9 hours Mowery's attorneys spent drafting the reply brief in support of the motion for fees if they had the chance, although they have not requested leave to do so.)

---

[2] Experience is one of the factors a court considers in determining the reasonable market rate. But the court notes that MetLife is paying both defense counsel the same rate, despite the considerably greater experience of Ms. Skilton Verhoff. And big clients with lots of litigation often get good deals from their law firms. So the court does not consider the defense rates to accurately reflect the market.

These hours are on the very high end of those awarded—or even asked for—in similar ERISA cases.[3] The factual issue that drove the case—the impact of a difficult-to-diagnose medical condition on Mowery's ability to perform her job—was complex and the relevant facts were buried in over 1500 pages of medical records. But the legal issues were fairly straightforward, and Mowery has not shown why the factual complexity of the case required approximately twice as much work as the typical ERISA case. The billing records of Mowery's attorneys don't help; many entries are vague and redundant, offering little insight into why they spent so much time on certain tasks. *See, e.g.*, Dkt. 37, ¶ 8 (listing three entries for reviewing the old administrative record and drafting the complaint, followed by four entries for reviewing the updated administrative record and drafting the complaint). So the court will exercise its discretion to reduce the hours billed in the three objected-to categories by one quarter. This results in a reduction of $17,963.50.

Defendants also complain about miscellaneous billing entries for tasks that they argue are "administrative or routine." Dkt. 39, at 13. "[T]ime spent on clerical tasks [such as filing briefs] should not be compensated," and although routine tasks may be compensated, the time

---

[3] *See, e.g.*, *Kaiser v. United of Omaha Life Ins. Co.*, No. 14-cv-762, 2016 WL 6581355, at *2 (W.D. Wis. Nov. 4, 2016) (approving 19 hours drafting a complaint and 92 hours briefing summary judgment motions as reasonable); *Boxell v. Plan for Grp. Ins. of Verizon Comm'ns, Inc.*, No. 13-cv-89, 2015 WL 4464147, at *7 (N.D. Ind. July 21, 2015) (approving 19.2 hours for "preliminary work," 91.9 hours briefing summary judgment motions, and 33.6 hours briefing cross-motions for attorney fees as reasonable); *Holoubek v. Unum Life Ins. Co.*, No. 06-cv-121, 2007 WL 5595900, at *3 (W.D. Wis. Jan. 26, 2007) (approving 17.4 hours drafting a complaint as reasonable but concluding that 113.1 hours briefing summary judgment were excessive); *Hannon v. Unum Life Ins. Co.*, No. 12-cv-992, 2014 WL 4653058, at *3 (S.D. Ind. Aug. 6, 2014) (concluding that 21.7 hours briefing a seven-page, boilerplate fees motion were excessive); *Hartman v. Dana Holding Corp.*, No. 12-cv-445, 2013 WL 6800112, at *5 (N.D. Ind. Dec. 20, 2013) (concluding that 27.2 hours drafting a complaint, 113.5 hours briefing summary judgment, and 47.6 hours briefing a fees motion were excessive).

spent on them should reflect their routine nature. *Hannon*, 2014 WL 4653058, at *2-3. The court sees no purely administrative tasks that should not have been billed. The routine tasks amount to less than an hour's work. The court will not further reduce time for this reason.

The court will cut the $302.72 in online legal research fees, too, even though defendants do not object to this amount. Because the pricing of online legal research is often subject to discounts, many firms follow the better practice of treating the expense of online legal research as an aspect of overhead that is not billed to clients. So, for many firms, the hourly rate already reflects the expense of online research. And although Mowery has been billed for legal research, it appears that Mowery has only paid some those invoices, and the unpaid balance is not carried forward. *See* Dkt. 36-1, at 4-6. Because it does not appear that Mowery's counsel is consistently charging them to Mowery, the court will not shift these fees to MetLife.

Defendants make several more generalized arguments for a downward adjustment, focusing on the amount involved and the results obtained, the experience, reputation, and ability of the attorneys, and awards in similar cases. But the reduction of hours adequately addresses these factors; no additional downward adjustment is appropriate. So the court will award Mowery $63,114.50 in attorney fees.

## B. Prejudgment and postjudgment interest

Mowery also seeks an award of prejudgment and postjudgment interest, in amounts to be determined after MetLife's administrative review is complete. Defendants argue that Mowery's request is premature, as she has not yet been awarded any money. The court agrees. Any interest awarded at this point would be purely speculative, as MetLife may still deny Mowery's application for benefits on remand. If Mowery eventually obtains an award of benefits, she may file suit seeking prejudgment and postjudgment interest on that award. *See*

*Cerentano v. United Maine Workers of Am. 1974 Pension Plan*, No. 15-cv-874, 2016 WL 7117150, at *2-3 (S.D. Ill. Dec. 7, 2016) (awarding prejudgment interest in a stand-alone suit when benefits were awarded by the plan after remand by the Seventh Circuit). Mowery has not pointed to any authority indicating that this is not the proper procedure for obtaining interest on an award of benefits. So the court declines to consider interest at this point, nor will it hold the issue in abeyance, as Mowery suggests. *See* Dkt. 42, at 23 n.6.

**C. Costs**

Finally, Mowery seeks reimbursement of $480.41 in costs. Dkt. 38. Defendants did not object, and the court finds that the costs were reasonably incurred in litigating this matter. The clerk will award Mowery the full amount.

ORDER

IT IS ORDERED that:

1. Plaintiff Lisa Mowery's motion for attorney fees, costs, and interests, Dkt. 34, is GRANTED in part and DENIED in part, as explained above.

2. Plaintiff's bill of costs, Dkt. 38, is GRANTED.

3. Plaintiff is awarded fees and costs in the total amount of $63,594.91.

4. The clerk of court is directed to enter judgment to reflect the award of attorney fees and costs.

Entered August 18, 2017.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge